UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| AMANDA R. TUCKER, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No: 3:20-cv-203 |
| v. ) | |
| ) | Judge Christopher H. Steger |
| ANDREW SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Amanda Tucker seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from her denial of disability insurance benefits by the Commissioner of the Social Security Administration under Titles II and XVI of the Act, 42 U.S.C. §§ 401-34, 1381-83f. [*See* Doc. 1]. The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c) with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 13].

For reasons that follow, Plaintiff's Motion for Summary Judgment [Doc. 17] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 23] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

### II. Procedural History

In August 2017, Plaintiff applied for disability insurance benefits, alleging disability as of June 15, 2017. (Tr. 16). Plaintiff's claims were denied initially as well as on reconsideration. (*Id.*). As a result, Plaintiff requested a hearing before an administrative law judge. (*Id.*).

In May 2019, an administrative law judge ("ALJ") heard testimony from Plaintiff, Plaintiff's attorney, and a vocational expert. (*Id.*). The ALJ then rendered her decision, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 25). Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial. That request was denied. (Tr. 1). Exhausting her administrative remedies, Plaintiff then filed her Complaint, seeking judicial review of the Commissioner's final decision under § 405(g) [Doc. 1]. The parties filed competing dispositive motions, and this matter is ripe for adjudication.

## III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's benefits application:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017.

2. Plaintiff had not engaged in substantial gainful activity from June 15, 2017, the alleged onset date, through her date last insured, December 31, 2017. (20 C.F.R. § 404.1571 *et seq.*).

3. Plaintiff had the following medically determinable impairments: neuropathy, degenerative disc disease, colitis, anxiety, affective disorder, organic mental disorder, fibromyalgia. (20 C.F.R. § 404.1520(c) *et. seq.*).

4. Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. Subject to certain limitations, Plaintiff has the residual functional capacity to perform "light work" as defined in 20 C.F.R. § 404.1567(b).

6. Plaintiff was unable to perform any past relevant work. (20 C.F.R. § 404.1565).

7. Plaintiff was born on September 1, 1980 and was 37 years old, which is defined as a younger individual, age 18-49, on the date last insured (20 C.F.R. § 404.1563).

8. Plaintiff has not been under a disability from June 15, 2017 through December 31, 2017 (20 C.F.R. § 404.1520(g)).

(Tr. at 15-24).

IV.     **Standard of Review**

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, she is not disabled; (2) if a claimant does not have a severe impairment, she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, she is disabled; (4) if the claimant is capable of returning to work she has done in the past, she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, she is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering her age, education, and work experience.

*Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching his/her decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence supports a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, "issues [that] are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United*

*States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.     Analysis

Plaintiff contends that substantial evidence does not support the ALJ's decision because: (1) The ALJ refused to re-open a prior decision; (2) Plaintiff's residual functional capacity does not adequately support her limitations; (3) The ALJ failed to properly consider the effect of Plaintiff's anemia and carpel tunnel; and (4) The ALJ erred in assessing Plaintiff's anxiety. The Court will address these issues in turn.

A.     **There is no constitutional basis to re-open Plaintiff's prior decision**

Plaintiff first disputes the ALJ's refusal to re-open Plaintiff's previous denial of benefits. [Doc. 18 at PageID #: 842-43]. Plaintiff said that, after her previous hearing with another ALJ— but before that ALJ rendered a decision denying benefits—Plaintiff "underwent an MRI of her lumbar spine . . . ." [*Id.* at PageID #: 843]. The results of the MRI showed that Plaintiff "suffered from severe degenerative disc disease and stenosis at the L5-S1, level, and that impingement on the exiting L5 nerve root was present. [*Id.* referencing (Tr. 667)]. When Plaintiff's physician received the MRI results, he prescribed "a rolling walker and manual wheel chair for [Plaintiff] as she [was] unable to ambulate effectively. [*Id.* referencing (Tr. 676)]. Plaintiff contends that the ALJ, here, should have re-opened the prior case because the MRI results show that she meets Listing § 1.04. [*Id.*].

While Plaintiff may dispute the ALJ's decision to not re-open the prior decision, this Court lacks jurisdiction to even consider Plaintiff's failure-to-reopen argument. In other words, claimants may seek to have an application re-opened, but the Commissioner's decision not to re-open a prior decision is unreviewable by the courts absent a colorable constitutional claim. *See Califano v. Sanders*, 430 U.S. 99, 107–08 (1977); *Bogle v. Sullivan*, 998 F.2d 342, 346 (6th Cir.1993) (holding

that "this court has no jurisdiction to review the actions of the Secretary on the earlier claim in the absence of a colorable constitutional claim."). Since Plaintiff's reasons for re-opening the prior decision lack any constitutional basis, the Court affirms the ALJ's decision not to re-open Plaintiff's prior decision. *See id.*

> B. **Plaintiff's residual functional capacity from her prior decision in light of *Drummond* and *Earley***

Plaintiff's second argument is that the ALJ erred because the vocational expert testified that Plaintiff could "not return to her past relevant work[,] which was sedentary exertion however the ALJ determined[d] [ ] [Plaintiff's] residual functional capacity as light work with some restrictions." [Doc. 18 at PageID #: 845]. That is, Plaintiff claims that on the one hand the vocational expert said that she could not return to prior sedentary-like work; yet on the other hand he said that she could perform, with limitations, at a higher level of exertion of "light work." [*Id.*]. In particular, Plaintiff says that applying *Drummond v. Commissioner of Social Security*, 125 F.3d 837 (6th Cir. 1997), the ALJ "failed to take into consideration Dr. Wright's treatment notes of June 20, 2017[,] wherein [ ] [Plaintiff] enter[ed] his office using a rolling walker." [*Id.* referencing (Tr. 676)].

Before turning to the merits of Plaintiff's claim, the Court must examine the impact of Plaintiff's initial disability determination as it relates to the present decision. In Plaintiff's initial disability finding, the ALJ found that Plaintiff could perform "light work" with additional limitations. (Tr. 21-22). In this case, while Plaintiff cites to *Drummond*, Plaintiff does not acknowledge the impact of prior ALJ findings on her current disability claim—a requirement outlined in *Drummond* and acquiesced to in AR 98-4(6).

In *Drummond*, the Sixth Circuit held that, if the agency formulated an RFC in a final decision on a prior claim, the agency "may not make a different finding in adjudicating a

subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity." AR 98-4(6). That is, the *Drummond* court held that an ALJ—guided by principles of *res judicata*—is bound by the RFC level determined in a prior claim for the same claimant absent new and material evidence indicating a change in the claimant's condition. 126 F.3d 837. The Sixth Circuit, in *Earley v. Commissioner of Social Security*, 893 F.3d 929, 933 (6th Cir. 2018), addressed the question of whether *res judicata* principles only applied when they favored the claimant or whether they also applied when they favored the government. In addressing this question, the *Earley* Court began with a detailed discussion of *Drummond*.

In *Drummond,* the ALJ originally found that a forty-nine-year old claimant who was limited to sedentary work was not disabled. *Earley*, 893 F.3d at 932. After the *Drummond* claimant turned fifty years old—which was the only change in her circumstances—she filed a second application for a new period. Under the applicable regulations, given her increased age with no other changes in her circumstances, she should have been deemed disabled. *Id.* However, "the second administrative law judge switched gears and found that she could carry out 'medium,' not just sedentary work, thus making her ineligible for benefits on this new ground." *Id.* (citing *Drummond*, 126 F.3d at 838-39). The *Earley* court explained why the *Drummond* court reversed:

> That was too much for our court to accept. "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits," we said, "the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842. Nothing had changed between the end of the first application and the beginning of the second one—other than the advancement of one year in the applicant's age. In that setting, we explained, "principles of *res judicata*" prevented the ALJ from revisiting the applicant's capacity to handle anything more than sedentary work in the absence of "new and additional evidence" showing a change in her condition. *Id.*

*Earley*, 893 F.3d at 932–33.

Like the *Drummond* claimant, the *Earley* claimant had applied twice for disability benefits. In the first decision, the ALJ found Earley was not disabled. She again applied for a new period of disability, and the ALJ concluded, under *Drummond*, that he was required to give the claimant the same RFC given in the previous decision absent "new and material evidence documenting a significant change in the claimant's condition." *Earley*, 893 F.3d at 930. "The district court reversed, on the ground that the 'principles of *res judicata*' announced in *Drummond* apply only when they favor an individual applicant, not the government." *Id.* The Sixth Circuit rejected the district court's approach to *Drummond* and laid out its previous holding succinctly stating:

> That was wrong. The key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications—apply to individuals *and* the government. At the same time, they do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings.

*Id.* at 930-31. Applying the *Drummond* analysis, here, the ALJ considered the following:

> This residual functional capacity is derived from an application of *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837 (6th Cir. 1997), and Social Security Acquiescence Ruling 98-4(6). These authorities require that when adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as a prior claim, adjudicators must adopt disability findings including findings of residual functional capacity from the final decision by an Administrative Law Judge or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period. However, this finding need not be adopted if there is new and material evidence relating to the finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding. After considering and weighing all the evidence of record, the undersigned finds that a departure from the residual functional capacity established in Judge Dowd's June 14, 2017 decision is not warranted because there has been no new or material evidence that indicated that the claimant's condition changed or worsened from the date of Judge Dowd's decision to the date last insured.

(Tr. 21-22).

Based on the ALJ's findings, there was no triggering or intervening event between Plaintiff's prior claims and this one. While each new application is entitled to review, plaintiffs "should not have a high expectation about success if the second filing mimics the first one and the individual has not reached a new age (or other) threshold to obtain benefits." *Earley*, 893 F.3d at 933. Hence, absent a showing that Plaintiff experienced a change in her physical condition or classification, the ALJ adopted, under *Drummond* and *Earley*, the previous ALJ's residual-functional-capacity assessment. *See Earley*, 893 F.3d at 933.

      C.    **Substantial evidence supports the ALJ's determined residual functional capacity**

Plaintiff's next identifies several issues with the ALJ's assessment of Plaintiff's residual functional capacity that, according to Plaintiff, amounts to legal error warranting remand. Plaintiff, for example, argues that the ALJ failed to consider Plaintiff's March 2017 MRI findings and use of a walker in June 2017. [Doc. 18 at PageID #: 843]. Plaintiff also states that the ALJ did not consider the severity of Plaintiff's fibromyalgia. Plaintiff further contends that the ALJ did not properly consider the opinions of Plaintiff's treating providers, Drs. Wright and Poehlein. Lastly, Plaintiff says that she requires greater limitations in her residual functional capacity than what the ALJ found.

Turning first to Plaintiff's March 2017 MRI findings and use of a walker, Plaintiff states that the MRI showed that Plaintiff "suffered from severe degenerative disc disease and stenosis at the L5-S1 level, and that impingement on the exiting L5 nerve root was present." [Doc. 18 at PageID #: 843 (citing Tr. 667)]. Upon receiving the result of the MRI, Plaintiff's provider, Dr. Wright, prescribed her a "rolling walker and manual wheelchair." [*Id.*].

Plaintiff's contention, however, does not capture the entire story. The ALJ did consider the March 2017 MRI. (Tr. 19). In discussing Plaintiff's treatment for back pain, the ALJ noted that the

MRI showed abnormalities, including degenerative disc disease at L5-S1 with disc protrusion causing moderate to severe narrowing of the right L5-S1 neural foramen with mild impingement of the exiting L5 nerve root and moderate to severe narrowing of the left L5-S1 neural foramen with perhaps minimal impingement on the left exiting L5 nerve root. (Tr. 19, 666-67). The ALJ also acknowledged that Plaintiff was prescribed a manual wheelchair. (Tr. 19, 669). The ALJ discussed additional longitudinal evidence pertaining to the period at issue, noting that Plaintiff complained of constant pain, and treatment notes indicated that she used a walker in June 2017. (Tr. 19, 23, 676). Yet, after that, Plaintiff had an essentially normal exam in October 2017, reported that she took Tramadol for pain but that she rarely needed it, and stated that she used Flexeril occasionally. (Tr. 19, 23, 655, 688-91).

This same finding also supports the ALJ's determination as it relates to fibromyalgia. Plaintiff claims that her fibromyalgia was more severe than what the ALJ credited it, but when Plaintiff saw Dr. Uzzle for a consultative exam, she only had 4 out of 18 tender points for fibromyalgia. (Tr. 19, 23, 401).

Plaintiff further faults the ALJ for "assigning no weight to the medical source statements of neither Dr. Wright [n]or Dr. Poehlein and instead giv[ing] persuasive weight to Dr. [ ] Uzzle—the one-time consultative examiner." [Doc. 18 at PageID #: 845 (Tr. at 23)]. In particular, Plaintiff asserts that the ALJ erred in finding that Plaintiff's need to lie down during the day was not supported by the evidence even though Drs. Wright and Poehlein said that such a requirement was necessary. [*Id.*].

Since Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's new regulations for evaluation of medical opinion evidence apply. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed.

Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5). Supportability and consistency, however, are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations set forth new articulation requirements for ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
>
> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will

explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3); *see generally Ephraim v. Saul*, No. 1:20-CV-633, 2021 WL 327755, at *13 (N.D. Ohio Jan. 8, 2021), *report and recommendation adopted sub nom.*, *Ephraim v. Comm'r of Soc. Sec.*, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021); *Gentry v. Saul*, No. 3:19-CV-778, 2020 WL 5100848, at *5–6 (M.D. Tenn. Aug. 10, 2020), *report and recommendation adopted sub nom.*, *Gentry v. Soc. Sec. Admin.*, 2020 WL 5096952 (M.D. Tenn. Aug. 28, 2020).

Plaintiff, here, protectively filed her application in June 2017 (Tr. 18). Accordingly, the ALJ followed the new set of regulations when assessing medical-opinion evidence (Tr. 19-24). That is, the ALJ considered and discussed the opinions in the record, but declined to adopt any of them in full. (*Id.*). The ALJ properly discussed the persuasiveness of each opinion and reached a determination supported by substantial evidence.

In her decision, the ALJ considered the opinion of Dr. Uzzle, a consultative examiner, who concluded that that Plaintiff could perform a range of medium exertional work, including lifting/carrying up to 50 pounds occasionally; sitting 3 hours at a time for a total of 8 hours in an 8-hour workday; standing for 2 hours at a time for a total of 6 hours; and walking for 2 hours at a

time for a total of 6 hours; using each hand to frequently reach, handle, finger, feel, and push/pull; using each foot to frequently operate foot controls; and frequently performing postural activities but never climbing ladders or scaffolds. (Tr. 404-08). The ALJ found Dr. Uzzle's opinion to be somewhat persuasive except the ALJ limited Plaintiff to light work with no manipulative limitations because Plaintiff had full range of motion in her hands and wrists along with negative Phalen's and Tinel's signs, and limited Plaintiff to occasional instead of frequent postural activities. (Tr. 23).

As noted, the ALJ considered Dr. Wright's medical opinion statement from March 2017 (Tr. 370-76, 377-82, 670-75) and found this opinion inconsistent with Dr. Uzzle's examination findings, or with the other physical exams of record that showed Plaintiff had a normal gait and station, negative straight leg raises, and normal strength and reflexes, (Tr. 23, 401, 504-05, 678, 691). Thus, the ALJ determined that Dr. Wright's opinion was not persuasive. (Tr. 23). The ALJ also considered the January 2019 letter from Jaime Byrum, PNP, and Dr. Poehlein, stating Plaintiff's impairments and noting disabling symptoms. (Tr. 23, 465-68, 684-87). The ALJ found it significant that the letter indicated they had treated Plaintiff for just one year. (Tr. 23, 465, 684). Thus, these providers did not treat Plaintiff during the time from the alleged onset date through the date last insured: June 15, 2017 through December 31, 2017. (Tr. 17, 23, 271, 465). Dr. Poehlein completed another medical opinion in May 2019 and opined that Plaintiff could rarely lift any amount of weight, that she had balance problems, and that she needed to lie down during the day. (Tr. 23, 773-77). This opinion was after Plaintiff's last insured date. (Tr. 17, 271). Evidence obtained after the date last insured is of little value unless it relates to the claimant's condition before the expiration of insured status. *See Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) (citing *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004)

("Evidence of disability obtained after the expiration of insured status is generally of little probative value.")).

In contrast to Plaintiff's assertions about the ALJ's application of the opinions from Drs. Wright and Poehlein, our appellate court has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). In *Mokbel-Aljahmi*, the Sixth Circuit explained that the starting point for a reviewing court was the ALJ's decision, not Plaintiff's arguments: "on review, it is not for [the court] to decide if there was evidence in favor of [Plaintiff's] position." 732 F. App'x at 400. "[Courts] decide only whether there was substantial evidence to support the ALJ's decision. If so, [they] defer to that decision even in the face of substantial evidence supporting the opposite conclusion." *Id.* (citation omitted). The Sixth Circuit has, in fact, recently rejected arguments similar to Plaintiff's, finding that it was "wrong" to argue that residual functional capacity must be based on a medical opinion that has reached the same conclusion. *See Reinartz v. Comm'r of Soc. Sec.*, 795 F.App'x 448, 449 (6th Cir. 2020) (claimant was "wrong" in arguing "that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion"). The ALJ, accordingly, did not err in evaluating the opinions of Drs. Wright and Poehlein.

The ALJ properly based Plaintiff's residual functional capacity upon the entire record. Residual functional capacity is the most a claimant can do despite the combined effect of all limitations. *See* 20 C.F.R. § 404.1545(a)(1); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). An ALJ develops the residual functional capacity based on all relevant evidence, including the claimant's subjective statements about her limitations and medical opinion evidence. *See* 20 C.F.R. §§ 404.1592, 404.1545; Social Security Ruling (S.S.R.) 16-3p (evaluating

symptoms in disability claims); S.S.R. 96-8p (assessing residual functional capacity). While Plaintiff cites medical evidence that she says supports a more restrictive residual functional capacity, Plaintiff arguments present an alternative view of the evidence, which does not overcome substantial evidence supporting the ALJ's findings. *See DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence")).

   **D.**  **The ALJ's consideration of Plaintiff's anemia and carpal tunnel syndrome**

   Plaintiff further faults the ALJ because the ALJ stated that Plaintiff "was not diagnosed with anemia until December 21, 2017, therefore does not meet the duration requirement." [Doc. 18 at PageID #: 848 (citing Tr. at 20)]. Plaintiff nonetheless argues that her "anemia is referenced in her October of 2017 visit with Dr. Poehlein[,]" and Dr. Wright's records. [*Id.*]. Additionally, Plaintiff says that she was "originally diagnosed with anemia in 2009 and lab results from July and December 2017 support [ ] [Plaintiff's] claim of anemia in addition to prior iron infusions and prescription iron supplements." [*Id.* citing (Tr. at 677)]. In fact, Plaintiff asserts that "[h]er anemia diagnosis goes as far back as February 2, 2015." [*Id.* citing (Tr. at 385)]. The Court, however, disagrees with Plaintiff's contention.

   The ALJ considered anemia and noted that it was not diagnosed until December 21, 2017; therefore, it did not meet the duration requirement since Plaintiff's date last insured was December 31, 2017. (Tr. 20). Thus, the ALJ determined that this condition was not a severe impairment. (Tr. 20).

   Moreover, although Plaintiff cites medical records that note anemia before December 2017,

Plaintiff does not allege any limitations as a result of anemia. [Doc. 18 at PageID #: 848]. Plaintiff also did not testify at her hearing regarding anemia as a significant condition or that she experienced any symptoms or limitations due to this condition. (Tr. 51-78).

Furthermore, the ALJ determined that Plaintiff had a variety of severe medical impairments and evaluated the entire record in assessing Plaintiff's residual functional capacity, including "impairments that are not severe." (Tr. 18). If Plaintiff has at least one severe impairment, it is "legally irrelevant" that other impairments could have also been found to be severe when the impairments were considered in combination at later steps. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020).

### E. The ALJ's consideration of Plaintiff's mental-health limitations

Plaintiff next argues that the ALJ "acted as a mental health professional in evaluating [Plaintiff's] [ ] anxiety." [Doc. 18 at PageID #: 848]. Plaintiff, particularly, alleges that the ALJ's finding that Plaintiff does not have anxiety was taken out of context. [*Id.*]. However, this was but one of several considerations the ALJ made. For example, the ALJ determined that anxiety, affective disorder, and organic mental disorders were severe medical impairments. (Tr. 19-20). The ALJ accounted for them in Plaintiff's residual functional capacity, including limitations to simple, routine, repetitive tasks performed in a work environment free of fast-paced work; involving only simple work-related decisions with few workplace changes; and only occasional interaction with the public, coworkers, and supervisors. (Tr. 21).

Pertinent regulations specify that mild—or even moderate—mental limitations are not disabling. *See* 20 C.F.R. §§ 404.1520a(c)(4) (at step two, mental restrictions are rated as none, mild, moderate, marked, and extreme; only extreme limitations preclude any gainful activity); 404.1520a(d)(1) ("mild" limitations are generally not severe); 404.1522(a) (a non-severe

impairment, by its very definition, does not significantly limit a claimant in her ability to perform basic work activities). Therefore, the ALJ committed no error when considering Plaintiff's mental restrictions in Plaintiff's residual functional capacity.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Summary Judgment [Doc. 17] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 23] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**IT IS SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE